# CONFIDENTIALITY, NON-COMPETITION, AND NON-SOLICITATION AGREEMENT

This Confidentiality, Non-Competition, and Non-Solicitation Agreement ("Agreement") is made between _Amber Mullen_ (the "Employee" or "you and TeachBAK-Care, a Georgia Corporation, and includes its successors and assigns or any such related entities (the "Company"). In consideration defined in Section 1 below, both parties agree as follows:

1. **Consideration**. In consideration of the Employee's execution of this Agreement, you shall hold the position of "_____" as an at-will employee of TeachBAK-Care and shall receive future wages and employment benefits, payment of which during the period of your employment is a condition of this Agreement. You acknowledge the receipt and sufficiency of this consideration.

2. **Restrictive Covenants**.

a. **Definitions:**

(1) **"Business of the Company"** means the highly competitive business of providing customer service training.

(2) **"Competitive Business(es)"** include any firm, partnership, joint venture, corporation and/or any other entity and/or person, and/or any licensee of such entity, that offer customer service training or provides materials for that purpose.

(3) **Your "Job Duties"** are those duties described in Exhibit A, attached hereto, as well as those duties as may from time-to-time reasonably be prescribed by the Company during the period of your employment with the Company.

(4) **"Customers"** means any firm, partnership, corporation and/or any other entity and/or person that purchased or purchases from the Company any of the services described in Section 2.a.(1).

(5) **"Customer Prospects"** means any firm, partnership, corporation and/or any other entity and/or person reasonably expected by the Company to purchase from the Company any of the services described in Section 2.a.(1).

(6) **"Vendors"** means any individual and/or entity that provides goods and services to the Company.

(7) **"Material Contact"** means personal contact or the supervision of the efforts of those who have direct personal contact with Customers, Customer Prospects, or Vendors in an effort to initiate or further a business relationship between the Company and such Customers, Customer Prospects, or Vendors.

(8) **"Confidential Information"** means information about the Company and its Customers, any information relating to teaching techniques methods or materials used by the Company,

initials _am_   3-25-17

Customer Prospects, and/or Vendors that is not generally known outside of the Company, which you will learn of in connection with your employment with the Company. Confidential Information may include, without limitation: (1) the terms of this Agreement, except as necessary to inform a subsequent employer of the restrictive covenants contained herein and/or your attorney, spouse, or professional tax advisor only on the condition that any subsequent disclosure by any such person shall be considered a disclosure by you and a violation of this Agreement; (2) the Company's business policies, finances, and business plans; (3) the Company's financial projections, including but not limited to, annual sales forecasts and targets and any computation(s) of the market share of Customers and/or Customer Prospects; (4) sales information relating to the Company's services; (5) customized software, marketing tools, and/or supplies that you will be provided access to by the Company and/or will create; (6) the identity of the Company's Customers, Customer Prospects, and/or Vendors (including names, addresses, and telephone numbers of Customers, Customer Prospects, and/or Vendors); (7) any list(s) of the Company's Customers, Customer Prospects, and/or Vendors; (8) the account terms and pricing upon which the Company obtains products and services from its Vendors; (9) the account terms and pricing of service or sales contracts between the Company and its Customers; (10) the proposed account terms and pricing of service or sales contracts between the Company and its Customer Prospects; (11) the names and addresses of the Company's employees and other business contacts of the Company; and (12) the techniques, methods, and strategies by which the Company develops, manufactures, markets, distributes, and/or sells any of the products described in Section 2.a.(1), including The information taught and/or the methods and materials used by the Company while rendering services to Customers. (9) "Territory" means the area defined in Exhibit A.

(10) "Trade Secrets" means Confidential Information which meets the additional requirements of the Georgia Trade Secrets Act ("GTSA"), O.C.G.A. §§ 10-1-760 to 767, and/or under any other applicable law.

(11) "Proprietary Rights" means any and all inventions, discoveries, developments, methods, processes, compositions, works, supplier and customer lists (including information relating to the generation and updating thereof), concepts, and ideas (whether or not patentable or copyrightable) conceived, made, developed, created, or reduced to practice by you (whether at the request or suggestion of the Company or otherwise, whether alone or in conjunction with others, and whether during regular hours of work or otherwise) during your employment, which may be directly or indirectly useful in, or related to, the Business of the Company or any business or products contemplated by the Company while you are an employee, officer, or director of the Company.

b. **You agree** that your work for the Company will bring you into close contact with many of the Company's Customers, Customer Prospects, Vendors, Trade Secrets, and Confidential Information. You further agree that the covenants in this Section 2 are reasonable and necessary to protect the Company's legitimate business interests and its Customer, Customer Prospect, and/or Vendor relationships, Trade Secrets, and Confidential Information.

initials *anr*   3-25-17

c. **You agree** to faithfully perform the duties assigned to you and will not engage in any other employment or business activity while employed by the Company that might interfere with your full-time performance of your duties for the Company or cause a conflict of interest. You agree to abide by all of the Company's policies and procedures, which may be amended from time-to-time.

d. **You further agree** that, due to your position, your engaging in any activity that may breach this Agreement will cause the Company great, immediate, and irreparable harm.

e. **Duty of Confidentiality.** You agree that during your employment with the Company and for a period of ten (10) years following the termination of such employment for any reason, you shall not directly or indirectly divulge or make use of any Confidential Information outside of your employment with the Company (so long as the information remains confidential, disclosure to students will not make the information no longer confidential) without the prior written consent of the Company. You shall not directly or indirectly misappropriate, divulge, or make use of Trade Secrets for an indefinite period of time, so long as the information remains a Trade Secret as defined by the GTSA and/or any other applicable law. You further agree that if you are questioned about information subject to this agreement by anyone not authorized to receive such information, you will notify the Company within 24 hours. You acknowledge that applicable law may impose longer duties of nondisclosure, especially for Trade Secrets, and that such longer periods are not shortened by this Agreement.

f. **Return of Confidential Information And Company Property**. You agree to return all Confidential Information and/or Trade Secrets within three (3) calendar days following the termination of your employment for any reason. To the extent you maintain Confidential Information and/or Trade Secrets in electronic form on any computers or other electronic devices owned by you, you agree to irretrievably delete all such information and to confirm the fact of deletion in writing within three (3) calendar days following termination of employment with the Company for any reason. You also agree to return all property in your possession at the time of the termination of the employment with the Company, including but not limited to all documents, records, tapes, and other media of every kind and description relating to the Business of the Company and its Customers, Customer Prospects, and/or Vendors, and any copies, in whole or in part, whether or not prepared by you, all of which shall remain the sole and exclusive property of the Company.

g. **Proprietary Rights.** Proprietary Rights shall be promptly and fully disclosed by you to the Company's General Counsel and shall be the exclusive property of the Company against you and your successors, heirs, devisees, legatees and assigns. You hereby assign to the Company your entire right, title, and interest therein and shall promptly deliver to the Company all papers, drawings, models, data, and other material relating to any of the foregoing Proprietary Rights conceived, made, developed, created or reduced to practice by you as aforesaid. All copyrightable Proprietary Rights shall be considered "works made for hire." You shall, upon the Company's request and at its expense, execute any documents necessary or advisable in the opinion of the Company's counsel to assign, and confirm the Company's title in the foregoing Proprietary Rights and to direct issuance of patents or copyrights to the Company with respect to such Proprietary Rights as are the Company's exclusive property as against you and your successors, heirs, devisees, legatees and assigns under this Section 2.g. or to vest in the Company title to

initials _am_  3-25-17

such Proprietary Rights as against you and your successors, heirs, devisees, legatees and assigns, the expense of securing any such patent or copyright, however, to be borne by the Company.

**h. Non-Competition.** You covenant and agree that, during the term of your employment with the Company and for five (5) years after the termination thereof, regardless of the reason for the employment termination, you will not, directly or indirectly, anywhere in the Territory, on behalf of any Competitive Business perform the same or substantially the same Job Duties.

**i. Non-Solicitation of Customers, Customer Prospects, and Vendors.** You also covenant and agree that during the term of your employment with the Company and for five (5) years after the termination thereof, regardless of the reason for the employment termination, you will not, directly or indirectly, solicit or attempt to solicit any business from any of the Company's Customers, Customer Prospects, or Vendors with whom you had Material Contact during the last two (2) years of your employment with the Company.

**j. Non-Solicitation of Employees.** You also covenant and agree that during the term of your employment with the Company and for five (5) years after the termination thereof, regardless of the reason for the employment termination, you will not, directly or indirectly, on your own behalf or on behalf of or in conjunction with any person or legal entity, recruit, solicit, or induce, or attempt to recruit, solicit, or induce, any non-clerical employee of the Company with whom you had personal contact or supervised while performing your Job Duties, to terminate their employment relationship with the Company.

**3. At-Will Status.** You acknowledge and agree that nothing in this Agreement is a guarantee or assurance of employment for any specific period of time. Rather, you understand that you are an at-will employee and that the Company may terminate your employment at any time for any reason. You are similarly free to resign at any time for any reason after submitting two weeks notice to the Company.

**4. Governing Law and Remedies.** In addition to any other remedies at law or in equity it may have, each party shall be entitled to seek equitable relief, including injunctive relief and specific performance, in connection with a breach of the provisions of this Agreement parties acknowledge and agree that they are bound by their **arbitration** obligations under Exhibit B attached hereto, which the parties also hereby agree to execute contemporaneously and is an integral part of this Agreement. The parties agree and acknowledge that all provisions of this Agreement shall be governed by and construed in accordance with the laws of the State of Georgia exclusively and without reference to principles of conflict of laws. The Federal Arbitration Act ("FAA") will supersede state laws to the extent inconsistent. The Arbitrator(s) shall have no authority to apply the law of any other jurisdiction. The covenants contained herein shall be presumed to be enforceable, and any reading causing unenforceability shall yield to a construction permitting enforcement. If any single covenant or clause shall be found unenforceable, it shall be severed and the remaining covenants and clauses enforced in accordance with the tenor of the Agreement. In the event the Arbitrator(s) should determine not to enforce a covenant as written due to overbreadth, the parties specifically agree that said covenant shall be modified and

initials _____ 3-25-17

enforced to the extent reasonable, whether said modifications are in time, territory, or scope of prohibited activities.

**6. Entire Agreement.** This Agreement, which includes Exhibits A and B, in conjunction with your offer letter if you received one, represents the entire understanding between the Company, TeachBAK-Care and you on the matters addressed herein and may not be modified, changed or altered by any promise or statement by the Company other than in writing signed by you and an authorized representative of Company. The waiver by the Company of a breach of any provision of this Agreement by any employee shall not be construed as a waiver of rights with respect to any subsequent breach by you.

You acknowledge that you have carefully read and understand the provisions of this Agreement, and understand that you have the right to seek independent advice, at your expense, or to propose modifications prior to signing the Agreement and have negotiated proposed modifications to the extent you deemed necessary.

Nothing contained in this Agreement creates a contractual right to a continued employment for a definite term. You represent and warrant that you have entered into this Agreement voluntarily and after consulting with whomsoever you wished.

Executed this _25th_ day of _March_, _2017_. (day) (month) (year)

**Employee:**

x _Amber Mullen_ (Print Name) _Amber Mullen_

Social Security #: [redacted]   Date: _3-25-17_

**The Company:**

By: _____   X _____

Title: _____   Date: _____

**EXHIBIT A – TERRITORY AND JOB DUTIES** - Date: _____

"Territory" means ___The state of Georgia_____ .

**Job Duties are:** _____

_____

_____

_____

_____

_____

**Employee:**

x _Amber Mullen_       (Print Name) _Amber Mullen_

Social Security #: ████████       Date: _3-25-17_

**The Company:**

By: _Pebbles Simmons_

Title: _CEO / President_       Date: _____

initials _____  _____

## EXHIBIT B - ARBITRATION CLAUSE

(1) In consideration of the benefits described in the Confidentiality, Non-Competition, and Non-Solicitation Agreement executed by *Amber Mullen* (the "Employee" or "you") and TeachBAK-Care, a Georgia Corporation, ("The Company"), along with its subsidiaries, parents, joint ventures, affiliated entities, and includes its successors and assigns or any such related entities (the "Company") on the same date hereto and into which this Exhibit B is incorporated, ("Agreement"), the Company, TeachBAK-Care, and you hereby agree that any controversy or claim arising under federal, state and local statutory or common or contract law between the Company and you involving any case or controversy including the construction or application of any of the terms, provisions, or conditions of the Agreement, including, but not limited to, breach of contract, tort, and/or fraud, must be submitted to arbitration on the written request of either party served on the other. Arbitration shall be the exclusive forum for any such controversy. For example, if the Company and you have a dispute concerning the interpretation or enforceability of one or more restrictive covenants, the parties will resolve the dispute exclusively through arbitration. The Arbitrator's decision shall be final and binding on both parties. However, if both parties agree and so long as both parties continue to agree, the dispute can be sent to mediation instead of arbitration.

(2) If any claim or cause of action at law or in equity is filed by either party in any state or federal court which results in arbitration being compelled and/or the claim or cause of action being dismissed, stayed, and/or removed to arbitration pursuant to this Agreement, the party who instituted the claim or cause of action in state or federal court, either wholly or in substantial part, shall, at the discretion of the Arbitrator(s), reimburse the respondent for its reasonable attorneys' fees, costs, and necessary disbursements to the extent permitted by law, in addition to any other relief to which it may be entitled, related to the state or federal court claim or action.

(3) Excluding the initial filing fee, which shall be borne by the claimant, the cost of arbitration shall be borne by the Company, unless the Arbitrator determines that any claim(s) brought by you was/were wholly frivolous or fraudulent. If an arbitration or any action at law or in equity is necessary to enforce or interpret the terms of this Agreement, the prevailing party, either wholly or in substantial part, shall, at the discretion of the Arbitrator, be entitled to its reasonable attorneys' fees, costs, and necessary disbursements to the extent permitted by law, in addition to any other relief to which it may be entitled.

(4) If the Employee or Company submits any controversy or claim to arbitration, the arbitration will be conducted in Atlanta, Georgia and all claims shall be submitted to and administered by the American Arbitration Association's Southeast Case Management Center in Atlanta, Georgia. (5) The arbitration shall comply with and be governed by the American Arbitration Association's Commercial Arbitration Rules ("Rules") effective as of the execution date below; to the extent such Rules are not contrary to the express provisions of this Agreement. The parties also agree that the American Arbitration Association Optional Rules for Emergency Measures of Protection ("Emergency Rules") shall apply to proceedings brought by either party. The above Rules and Emergency Rules can be found at the following page of the American Arbitration Association's website, www.adr.org: http://www.adr.org/sp.asp?id=22440. You acknowledge that you should read these Rules and Emergency Rules and that it is your responsibility to

initials *AM* 3-25-17

be familiar with them prior to signing the Agreement. If you are unable to access the Rules and/or Emergency Rules at the above website, you can request a copy of them from a Company official prior to signing the Agreement. (6) The parties agree and acknowledge that all provisions of this Agreement shall be governed by and construed in accordance with the laws of the State of Georgia exclusively and without reference to principles of conflict of laws. The Federal Arbitration Act ("FAA") will supersede state laws to the extent inconsistent. Any claim(s) involving the construction or application of this Agreement must be submitted to arbitration within the statute of limitations period for such claim(s) under Georgia state law and shall be dismissed if the statute of limitations period is not met. The Arbitrator(s) shall have no authority to apply the law of any other jurisdiction. (7) The dispute shall be heard and determined by one Arbitrator, unless both parties mutually consent in writing signed by you and an authorized representative of Company to a panel of three (3) Arbitrators. Unless both parties mutually consent otherwise, the parties agree and request that the Arbitrator(s) issue a reasoned award in accordance with Commercial Arbitration Rule R-42(b). The single arbitrator will be chosen by the AAA using their best judgement considering the parties and the controversy in dispute. (8) The arbitrations will be completely confidential. Neither party nor the arbitrator may discuss the arbitration with 3rd parties that are not part of the arbitration proceedings during or after the conclusion of the arbitration.

**I UNDERSTAND THAT BY SIGNING THIS AGREEMENT I AM GIVING UP MY RIGHT TO A JURY TRIAL.**

Executed this _25th_ day of _March_, _2017_. (day) (month) (year)

Employee:

x _Amber Mullen_    (Print Name) _Amber Mullen_

Social Security #: [redacted]    Date: _3-25-17_

The Company:

By: _Nobles Simmons_

Title: _CEO Founder_    Date: _____

Page 8 of 8    initials _____ _____